JAMES C. MANNING et al., complainants-respondents,

*v.*

HOME BUILDING AND SUPPLY COMPANY, defendant-appellant.

[Argued May term, 1925.    Decided October 19th, 1925.]

On appeal from a decree of the court of chancery advised by Vice-Chancellor Foster, who delivered the following opinion orally:

"I may as well dispose of this case now. If either of you desire to appeal, I will file a formal memorandum, but I have the situation in mind now better than I will have a month hence, if I wait for briefs to be filed.

"It appears that in 1908 James C. Manning, one of the complainants in these causes, was the owner of property in the town of Westfield, county of Union, which he conveyed about the 15th day of May of that year to the Home Building and Supply Company, the defendant corporation in these causes; that he took back for part of the purchase price a mortgage for $16,000, and that he held the mortgage for some time, and that before he made the transfer of the property to the Home Building and Supply Company he had laid out the property by one map, which, apparently, never was put in use. Subsequently, about 1907 or 1908, he revised that map, and it has been designated and referred to throughout the pleadings as the revised map.

"About the time of the conveyance of the property to the Home Building and Supply Company another map of the premises was prepared, which was designated or referred to throughout the cases as the perfected revised map. In the course of years the Home Building and Supply Company defaulted in the payment of interest, so that Mr. Manning was entitled to foreclosure, and did foreclose. The record of

that foreclosure proceeding has been offered on behalf of the complainants here, and offered at the court's suggestion. I haven't the papers before me to know when the bill of foreclosure was filed, but counsel agree that the sale of the premises by the sheriff occurred some time about 1915. In the bill to foreclose that mortgage, the mortgaged premises are described. It is stated therein that certain parts of the mortgaged premises were duly released, according to the terms of the mortgage, from the date of the conveyance up to the date of the filing of the bill, and they are excepted from the foreclosure by express reference thereto, and by further express reference to the fact that such releases of mortgage are recorded in the office of the clerk of Union county.

"The foreclosure proceedings were uncontested by any of the defendants; decrees *pro confesso* were duly entered, and a writ of *fi. fa.* was duly issued. In the decree, as counsel have called it to my attention, it directs the sale of the mortgaged premises, to satisfy the amount of about $9,000 due to Mr. Manning, the complainant therein.

"In the course of the hearing I stated that I understand the reference in the decree to the mortgaged premises to mean or to refer to all of the mortgaged property that had not been released by complainant, and I would say that this is so, whether the releases refer to the perfected revised map or the revised map. No intervening interest of an. innocent party has appeared in the case.

"By the terms of the writ the language of the decree is not followed, nor were the terms of the allegations of the bill of complaint followed, but a reference is made in the writ to the revised map, and this reference is the cause of and has produced this litigation.

"The sale and conveyance to Mr. Manning by the sheriff occurred some time in the year 1915. Subsequently, it was discovered that the sheriff's deed, given in pursuance of the sale and in the performance of his duty under the writ, did not conform in the description to the mortgaged premises as described in the bill of complaint, nor did it convey the property which Mr. Manning held as security under his mort-

gage after the released premises had been deducted there-from.

"As a result of this discovery, Messrs. Codington & Blatz, on the 19th of December, 1921, concluded that, in order to get the title to the mortgaged premises, the decree had directed to be sold, into Mr. Manning or into the name of his grantee, Miss Adams, cleared up, the proper procedure was to file a bill of strict foreclosure against the omitted and unsold portion of the mortgaged premises, if there were any, as admittedly there was. That proceeding went along until one of my motion days, a year or two ago, when objection was made to the bill, and I then intimated, apparently, not only on that day, but on a subsequent motion day, when the matter again came before me, that I thought Mr. Manning was without any right to file a bill of strict foreclosure, and suggested that he had better take some other proceeding to get the relief he thought he was entitled to; acting upon that suggestion, or acting independently of it, Messrs. Lindabury, Depue & Faulks were consulted and a new bill was filed, without the old bill for strict foreclosure having been dismissed, or the action thereon discontinued. Mr. Angleman, representing some of the directors and stockholders of the Home Building and Supply Company, answered in both suits, disputing the right of any or all of the complainants to the relief they seek. Both suits have now gone to final hearing, and no evidence has been offered in support of the bill of strict foreclosure, and I shall advise that it be dismissed, as I find no right in the complainants to maintain any such bill, in view of the facts set out in the pleadings in the second suit, and such facts as are offered in evidence on this present hearing.

"I am not clear when it happened, but by the governor's proclamation the defendant, Home Building and Supply Company, has had its charter forfeited, and it is now appearing by two of its stockholders and directors, who are acting more or less in the capacity of liquidators. The other defendant, Mr. William H. Abbott, was a stockholder and also a director of this defunct corporation. Complainants this

morning, at the opening of the hearing of both of these causes, asked leave to amend the bill of complaint, by adding as a party complainant the British-American Investment Company, which is a corporation organized and controlled by Ada Abbott, one of the complainants, and, notwithstanding the objection of Mr. Angleman, I have allowed the amendment to be made. I am making it on the express condition that it actually be made on the record in the clerk's office, and that if Mr. Angleman's pleadings do not already meet the rights of the British-American company, which I understand are merely the same rights of Miss Abbott, and is only another name for her, I shall, of course, give him leave to file any additional pleading he may wish to file, to protect his clients' interest against this corporation, and shall consider that he has done so as of this morning. I presume, if I understand your position correctly, Mr. Angleman, it will be that you deny that this corporation has any greater rights or is entitled to any more relief than Ada Abbott or Mr. William H. Abbott, and is bound as much as Miss Abbott and Mr. Manning, and if you desire you can file a formal answer to that effect, and I shall consider that to have been done for the purpose of this hearing.

"From the statements of counsel, which are not disputed and are in harmony up to the issuance of the writ, I find that there is a substantial discrepancy in the mortgaged premises as described in the bill and referred to in the decree, and that described in the writ and as sold by the sheriff, and for which he gave a deed. I find that complainants are entitled to have this discrepancy corrected. I think that the Home Building and Supply Company and the other defendants have no interest therein, or in the premises that were omitted from the sheriff's sale by reason of such error and mistake, and I will advise that complainants are entitled to have an *alias* writ issue, if that be the course they elect to pursue, and I think it is a proper one, or I will permit the writ to be amended and deed reformed, if it be necessary, in order to give them relief so that they may effect a sale of the premises or acquire title to the omitted premises. I am inclined to

think that is almost unnecessary. The decree in itself, I think, gives you all the relief you want, but if you desire the additional sale, in order to perfect your rights in the interest of other parties who have purchased from you, as well as others who may purchase in the future, I will advise that such an *alias* writ issue to you, with the understanding, however, that if you do so perfect your title, or perfect it in any way under the decree of the court, that you shall give the benefit of that perfected title to any purchaser from you since the date of the conveyance from the sheriff to you, so that other people may be protected with yourselves."

*Mr. Winfield S. Angleman,* for the appellant.

*Messrs. Lindabury, Depue & Faulks,* for the respondents.

PER CURIAM.

It is admitted, as expressly set forth in respondent's brief, that the defendant, Herbert C. McVoy, in his individual capacity, set up no interest in the property in question, and that he should therefore not be included individually in that portion of the decree which orders confirmation deeds to be given, and that the decree of the court of chancery should be modified in this respect, leaving its provisions as to such deeds, however, as to the defendants, Home Building and Supply Company, and Herbert McVoy and Mary McVoy, two of the trustees on dissolution, in full force and effect.

Subject to this modification, which is hereby directed, the decree of the court of chancery is affirmed, for the reasons set forth in the opinion of the learned vice-chancellor, who advised it.

*For affirmance*—THE CHIEF-JUSTICE, MINTURN, KALISCH, BLACK, KATZENBACH, CAMPBELL, LLOYD, WHITE, VAN BUSKIRK, McGLENNON, KAYS, JJ.   11.

*For reversal*—None.